MEAD, J.,
dissenting.
[¶ 29] I agree with the broad principle confirmed in the Court’s decision: the Maine Human Rights Act prohibits discrimination in access to public accommodations based upon sexual orientation. 5 M.R.S. § 4592(1) (2013). “Public accommodations” include multiple-user public bathrooms. See id. (referencing the “accommodations” and “facilities” of places of public accommodation). “Sexual orientation” includes gender identity. 5 M.R.S. § 4553(9-0 (2013). Accordingly, a transgendered individual has the right to use a public bathroom that is designated for use by the gender with which he or she identifies. I depart and dissent, however, from the Court’s final conclusion that RSU 26 has committed an act of illegal discrimination upon the facts of this case because well-established principles of statutory construction require a different result.
[¶ 30] A civilized society protects its citizens from discrimination that is based on petty prejudices and mean-spirited exclusionary practices. The MHRA identifies classes of persons who are entitled to specific protections from such discrimination. The Legislature has included sexual orientation as one of the categories entitled to protection, and rightfully so. Considering the issue presented here, transgendered persons who live their lives as a member of the sex with which they identify face unique challenges with regard to public multiple-user bathrooms. It is simply unreasonable to expect a transgendered person to enter a bathroom designated for use by the sex with which they do not identify. Doing so is likely to provoke confrontation, or even violence. If transgendered people are prohibited from using bathrooms designated for the sex with which they .identify, they are left with no practical recourse in most public settings. This result is simply untenable.
[¶ 31] The Court’s decision concludes, and I agree, that elementary schools are places of public accommodation. Court’s Opinion ¶ 16 (citing 5 M.R.S. § 4553(8)(J) (2013)). The MHRA provides that it is unlawful to withhold “facilities” in places of public accommodation, including bathrooms, from any person on account of “race or color, sex, sexual orientation, physical or mental disability, religion, ancestry or national origin.”[11] 5 M.R.S. § 4592(1).
*609 [¶ 82] The broad principle established by the Court’s interpretation of the MHRA is that access to multiple-user public bathrooms may not be denied based upon sexual orientation. That principle, by implication, applies equally to the other categories enumerated in the MHRA. See id. Specifically, it means that no person may be denied access to a public bathroom in a school or other place of public accommodation on the basis of their race, color, physical or mental disability, religion, ancestry, national origin, or sex. Thus, the MHRA, as construed by the Court today, prevents the denial of access to any public bathroom on the basis of a person’s sex. Obviously this result is an extraordinary departure from the well-established custom that public bathrooms are typically segregated by sex.
[¶ 38] The understandable response by those opposed to this inescapable result is: the Legislature would never have intended that! I do not disagree. But the plain language of the MHRA and the unavoidable implications of the Court’s decision set a well-established societal custom (segregation of public bathrooms by sex) and the MHRA on a collision course.
[¶ 34] I repeat that the right of transgendered individuals to access public accommodations consistent with their gender identity must be protected. It falls to the Legislature to reconcile the plain language of the MHRA as it is currently written and interpreted by the Court with society’s longstanding expectation of having multiple-user bathrooms segregated by sex.[12]
[¶ 35] I realize that this issue at its broadest is not specifically presented by the facts of this case. I address it to highlight the scope and potential ramifications of the Court’s decision, to invite the Legislature to clarify its intent concerning this anomaly in the law, and to provide context for the statutory construction analysis required by this case that follows.
[¶ 36] RSU 26 is not guilty of unlawful public accommodations discrimination if the Legislature has approved segregating school bathrooms by sex in a way that supersedes the MHRA. Applying well-established rules of statutory construction, I conclude that it did so by purposely leaving 20-A M.R.S. § 6501 (2013) in its current form after amending the MHRA in 2005. At the very least, this circumstance raises enough of a question to require us to defer to the Legislature to resolve the uncertainty created by section 6501’s apparent tension with the MHRA. Section 6501 provides:
1. Toilets. A school administrative unit shall provide clean toilets in all school buildings, which shall be:
[[Image here]]
B. Separated according to sex and accessible only by separate entrances and exits[.]
[¶ 37] Section 6501, in the specific case of school bathrooms, thus establishes, and indeed mandates, an exception to the MHRA’s general rule forbidding the segregation of facilities in schools by sex. We recently reaffirmed “the fundamental rule *610 of statutory construction that we favor the application of a specific statutory provision over the application of a more general provision when there is any inconsistency.” Cent. Me. Power Co. v. Devereux Marine, Inc., 2013 ME 37, ¶ 22, 68 A.3d 1262.
[¶ 38] Furthermore, the Legislature is “presumed to be aware of the state of the law ... when it passes an act.” Stockly v. Doil, 2005 ME 47, ¶14, 870 A.2d 1208 (quotation marks omitted). Notwithstanding the Court’s assertion that the purpose of section 6501 is merely “to establish ... requirements for the physical layout of toilet facilities,” and not to “address how schools should monitor which students use which bathroom,” Court’s Opinion ¶ 18, I presume as I must that the Legislature was aware of the interplay between section 6501 and the public accommodations discrimination provision of the MHRA. It would make little sense for the Legislature to require that school bathroom facilities be “[separated according to sex and accessible only by separate entrances and exits,” 20-A M.R.S. § 6501(1)(B), and at the same time mandate that schools allow the use of those sex-segregated facilities by students of either sex.[13]
[¶ 39] The Court states: “[Section 6501] does not purport to establish guidelines for the use of school bathrooms.” Court’s Opinion ¶ 18 (emphasis in original). I vigorously disagree. The statutory directive to segregate bathrooms in schools by sex, and providing for separate entrances and exits for those bathrooms, clearly anticipates that the use of a bathroom would be restricted to the sex for which it has been designated. The statute is susceptible to no other reading. Thus I also disagree with the Court’s announeement that Section 6501 somehow vests schools with the prerogative of “creating its own policies concerning how these public accommodations are to be used.” Court’s Opinion ¶ 21.
[¶ 40] Accordingly, I depart from the Court’s casual dismissal of the fact that the plain language of a specific statute explicitly requires segregating school bathrooms by sex. The plain language of the provisions of section 6501 and the MHRA are in conflict, and I believe that principles of comity require us to defer to the representative branch of government to resolve the issue.
[¶ 41] I would therefore affirm the judgment of the Superior Court.

. By definition, "sexual orientation” includes gender identity. 5 M.R.S. § 4553(9-C) *609 (2013). The term "sex” connotes the traditional concept of anatomical sex, or sex assigned at birth. The fact that both terms are included separately clearly denotes that neither is subsumed within the definition of the other.

. I can find no authority, statutory or otherwise, that allows public bathrooms, other than school bathrooms (discussed infra), to be segregated by sex. On the contrary, the plain language of the MHRA, read in conjunction with the principles announced by the Court today, inescapably lead to the conclusion that an individual may not be denied access to public bathrooms based upon sex.

. Although not specifically defined in the MHRA, the only logical definition for the word "sex" in 5 M.R.S. § 4592(1) (2013) is the anatomical gender assigned at birth. Because the term has existed in section 6501 for decades, I conclude that the Legislature intended the same meaning there.